IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| **LORMAN L. SKINNER** § | **CIVIL ACTION NO. 6:21-cv-01833** |
| *Plaintiff* § | |
| **v.** § | |
| § | |
| **AMERICAN POLLUTION** § | |
| **CONTROL CORPORATION** § | |
| *Defendant* § | **JURY DEMAND HEREIN** |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**NOW COMES** Plaintiff, **LORMAN L. SKINNER**, through undersigned counsel, who files his Original Complaint against Defendants, **AMERICAN POLLUTION CONTROL CORPORATION.** He hereby states as follows:

**JURISDICTION AND VENUE**

1. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964 as it appears at 42 U.S.C. § 2000e *et seq.*

2. This Court has jurisdiction pursuant to the following statutes:

    a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, law or treaties of the United States;

    b. 28 U.S.C. § 1343 (3) and (4), which gives district courts jurisdiction over actions to secure civil rights extended by the United States government;

3. Plaintiff filed his Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on or about May 14, 2020 (Charge No. 461-2020-01101).

4. The EEOC issued its Notice of Suit Rights on March 29, 2021 *See* Exhibit A. Plaintiff is afforded 90 days from his receipt of such Notice to commence suit, and the date of this filing is within the statutory period.

5. Venue is appropriate in this judicial district under 28 U.S.C. § 1391 (b) because the events that gave rise to this Complaint occurred in the Western District of Louisiana, specifically in St. Mary Parish, making this Court the most appropriate Division for this suit.

## PARTIES

6. Plaintiff is a citizen of the United States and resides in the City of New Iberia, State of Louisiana.

7. Plaintiff is African-American and, as such, is a member of a protected class.

8. Defendant, **AMERICAN POLLUTION CONTROL CORPORATION** ("AMPOL"), is a municipal corporation licensed to conduct and conducting business in the State of Louisiana. The acts complained of in Plaintiff's Complaint occurred in St. Mary Parish, State of Louisiana, where AMPOL performs a significant amount of business.

9. Upon information and belief, at the time of the alleged events, both in the year of the alleged discrimination and the year prior thereto, AMPOL employed between 100 and 200 employees between its various facilities.

10. At all times relevant to this suit, Plaintiff worked as a technician for AMPOL at its location in Bayou Vista, Louisiana, earning approximately $13.00 per hour.

## FACTUAL ALLEGATIONS

11. Plaintiff began his employment with Defendant as a Technician on August 28, 2012. Throughout his entire employment with Defendant, Plaintiff earned approximately $13.00 per hour.

12. Upon information and belief, Plaintiff was one (1) of approximately seven (7) African-American employees stationed at AMPOL's Bayou Vista facility.

13. Upon information and belief, AMPOL hired Drew Duval ("Duval") (Caucasian) in approximately 2018. Upon information and belief, at all relevant times, Duval served as the Yard Foreman and, as such, was Plaintiff's supervisor.

14. From Duval's hire through the date of Plaintiff's discharge, Duval regularly and pervasively used the term "n****r" when referring to any African-American employee. Duval used the term "n****r" on a daily basis, often employing the term several times per day.

15. Duval regularly and pervasively directed the term "n****r" at Plaintiff. Duval also regularly and pervasively used the term "n****r" in Plaintiff's immediate presence.

16. Plaintiff repeatedly complained to AMPOL managers and supervisors about Duval's comments; however, no remedial action was taken whatsoever. Instead, Duval continued to refer to Plaintiff and other African-American employees as "n*****s."

17. Upon good information and belief, several other employees at the Bayou Vista facility complained to management about Duval's racially derogatory and offensive comments; however, no remedial action was ever taken. Duval continued to refer to Plaintiff and other African-American employees as "n*****s."

18. Plaintiff did not work for Defendant from July 2019 through January 2, 2020. Plaintiff was re-hired by Defendant on January 2, 2020 as a Technician and at a rate of $13.00 per hour.

19. In January 2020, a Human Resources employee appeared on-site and indicated that the employees would be receiving a pay raise. Upon information and belief, every employee except Plaintiff was given a pay raise at this time.

20. Despite the fact that Plaintiff was employed by Defendant over the course of nine (9) years, Plaintiff did not ever receive a pay raise. On numerous occasions, AMPOL hired several new, Caucasian, less experienced individuals and compensated them, outright, at more than Plaintiff's $13.00 hourly pay rate.

21. In late January 2020, after Duval got another technician terminated, the employee called two (2) of his friends, and the three (3) individuals tried to confront Duval on the worksite. In response, and in the immediate presence of Plaintiff, Kevin Duffy (African-American, technician), Derrick Hurst (African-American, technician), as well as supervisors, Casey Guidry (Caucasian) and Reymel Jackson (African-American), yelled, "all these n****rs out here is so dumb." In response to the comment, Guidry issued Duval a one-day suspension, and then permitted him to return to work the day after.

22. On February 12, 2020, Duval overtly referred to Plaintiff as a, "p***y a** n****r," which completely offended Plaintiff. Plaintiff immediately walked away from the conversation and walked outside. Duval followed Plaintiff outside and deliberately stated, "I don't like your people," referring to African-Americans.

23. Plaintiff immediately reported Duval's comment to Casey Guidry, Facility Manager and Cory Breaux, another on-site Manager.

24. In response to Plaintiff's complaint pertaining to the "p***y a** n****r" comment, Cory Breaux told Plaintiff that he would provide Plaintiff with the documents necessary to file a formal complaint.

25. The following day, Guidry and his wife appeared on the worksite, and Ms. Guidry asked Plaintiff what had transpired the day prior. Plaintiff relayed the details of the incident, including Duval's deliberate use of racially demeaning language, to Guidry and Ms. Guidry. Ms. Guidry indicated to Plaintiff that Duval should be terminated immediately for the offensive behavior.

26. After speaking to Ms. Guidry, Plaintiff directly reported the situation to Guidry. When Guidry asked Plaintiff what relief he was seeking, Plaintiff indicated that he wanted Duval "off the yard." Guidry did not respond to Plaintiff.

27. After several weeks without receiving any assistance or response whatsoever, Plaintiff contacted the U.S. Equal Employment Opportunity Commission in approximately April 2020.

28. Plaintiff completed his EEOC interview on May 10, 2020.

29. Plaintiff digitally signed his Charge of Discrimination with the EEOC on May 14, 2020. Therein, Plaintiff alleged that he had been subjected to a racially hostile work environment on the basis of his race, due to Duval's pervasive use of racial epithets in the workplace, and that management failed to take corrective action.

30. Upon information and belief, the EEOC electronically informed AMPOL of Plaintiff's Charge of Discrimination almost immediately upon Plaintiff's electronically signing his Charge on May 14, 2020.

31. Following the filing of his Charge, Plaintiff received a telephone call from Guidry asking him "what's going on?" with respect to Plaintiff's EEOC Charge. In response, Plaintiff indicated that AMPOL should have terminated Duval upon his repeated and reported use of "n****r" on the worksite.

32. Plaintiff appeared for work on May 17, 2020, and noticed that his work clothes and boots had been thrown in the trash. Plaintiff approached Guidry about the incident, at which time Guidry asked Plaintiff if he had "found another job." When Plaintiff asked Guidry what he was talking about, Guidry informed Plaintiff that he had been terminated.

33. At no time has Plaintiff been provided a reason for his termination. Similarly, Plaintiff has not, at any time, received any termination slip or paperwork explaining the purported basis for his termination.

34. Despite various employees' repeated complaints involving Duval's racist behavior, and despite Plaintiff's formal EEOC Charge evidencing the same, Duval nevertheless remained employed by AMPOL until approximately June 23, 2020, when he was terminated for getting in to a physical fight with another employee on the worksite. Duval was not terminated or otherwise materially reprimanded, at any time, for his pervasive use of racial epithets in the workplace.

---

**FIRST CAUSE OF ACTION:**
**RACIAL DISCRIMINATION IN EMPLOYMENT (HOSTILE WORK ENVIRONMENT)**
*Pursuant to 42 U.S.C. 2000e et seq.*

---

35. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

36. Under Title VII, it is an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C.S. § 2000e-2(a)(1).

37. Defendant is an "employer" subject to the provisions of Title VII. At all relevant times, AMPOL was an entity engaged in an industry affecting commerce who had fifteen or more employees for at least twenty weeks in the current or preceding calendar year.

38. Plaintiff is African-American and is therefore a member of a protected class.

39. Plaintiff was qualified for his position as Technician. Plaintiff was able to perform all functions of his job, and he did so without issue for nearly eight (8) years.

40. Duval's persistent and pervasive use of the word "n****r" with reference to Plaintiff and other African-American employees in Plaintiff's immediate presence caused Plaintiff substantial embarrassment, offense, grief, anxiety, and mental anguish. Plaintiff perceived the work environment to be subjectively abusive on the basis of his race. This is furthered by the fact that Plaintiff complained of the conduct to management, and, upon management's failure to act, contacted and filed a Charge of Discrimination with the U.S. EEOC regarding the same.

41. The harassment to which Plaintiff was subjected was based entirely on his race, African-American. This is most readily reflected by the pervasive use of the term "n****r," which is a racial epithet specifically directed to those of African-American descent.

42. The work environment was objectively abusive to similarly situated individuals. In fact, several other AMPOL employees complained of the same conduct to management, who altogether failed to take any meaningful remedial action whatsoever.

43. Although AMPOL was made aware of the hostile work environment promulgated by Duval on numerous occasions, Defendant took no remedial action to stop the hostile environment and to prevent this type of unlawful activity from occurring. Duval was not terminated for the racist behavior but was instead allowed to continue his employment until June 2021, when he got termination for fighting another employee on-site.

44. Defendant, through its agents and officers, knowingly and intentionally allowed the hostile work environment to exist.

45. Defendant, by its overt act or failure to act herein, supported the ongoing hostile work environment.

46. Defendant's discrimination is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

47. Wherefore, Plaintiff asks this Honorable Court to find **AMPOL** liable for the violation of Title VII of the Civil Rights Act of 1964.

**SECOND CAUSE OF ACTION:**
**RETALIATION**
*Pursuant to 42 U.S.C. § 2000e-3(a)*

48. Plaintiff incorporates and reinstates each of the above paragraphs as if fully set forth herein.

49. Title VII makes it an unlawful employment practice for a person covered by the Act to discriminate against an individual "because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceedings, or hearing under this subchapter. 42 U.S.C. § 2000e-3(a).

50. Plaintiff reported what he perceived to constitute unlawful racial harassment, specifically the pervasive use of "n****r" by Duval, to both to Guidry and Cory Breaux on various occasions throughout his employ.

51. Plaintiff's complaints of supervisors using the word "n*****" pervasively in his presence constituted protected opposition activity for purposes of Title VII.

52. Plaintiff's subsequent filing of a Charge of Discrimination with the EEOC pertaining to the alleged hostile work environment constitute protected participation activity for purposes of Title VII.

53. Plaintiff signed his EEOC Charge on May 14, 2020. Upon Guidry learning of Plaintiff's EEOC Charge, Guidry immediately contacted Plaintiff about the same, at which time Plaintiff indicated he had filed a Charge because AMPOL had refused to terminate the employee who had pervasively used the term "n****r" to refer to African-American employees, including, but not limited to, Plaintiff.

54. Upon Plaintiff's arrival at the worksite on May 17, 2020 – within three (3) days of Plaintiff's EEOC Charge – he was suddenly and unexpectedly informed by Guidry that he had been terminated. No justification has ever been provided to Plaintiff for his termination.

55. As set forth above, Defendant, through its agents, supervisors and/or employees, in a continuing course of conduct, subjected Plaintiff to retaliation and discrimination in the terms, conditions, and privileges of his employment in retaliation for him opposing what he believed to be unlawful conduct on various occasions.

56. Defendant failed to act in accordance with 42 U.S.C. § 2000e-3(a).

57. Defendant's retaliation is willful, intentional, and committed with malice or reckless indifference to the protected rights of Plaintiff.

58. As a result of Defendant's discriminatory and retaliatory conduct, Plaintiff has suffered monetary losses in the form of lost wages, lost earning opportunities, and other monetary losses to be more fully developed at the trial of this matter.

59. As a result of Defendant's discriminatory conduct, Plaintiff has suffered non-monetary losses including but not limited to emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-monetary losses to be more fully developed at the trial of this matter.

60. Wherefore Plaintiff asks this Honorable Court to find Defendant, **AMPOL,** liable for the violation of 42 U.S.C. § 2000e-3(a).

### THIRD CAUSE OF ACTION:
### Violation of 42 U.S.C. § 1981

61. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

62. 42 U.S.C. § 1981 protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981(a). The statute currently defines "make and enforce contracts" to include the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b). 42 U.S.C. § 1981 ensures that all persons have the same right to make and enforce contracts, including the making, performance, modification, and termination of employment contracts.

63. Plaintiff incorporates the contents of Paragraphs 1-62 by reference, as Title VII and § 1981 claims are analyzed under the same evidentiary standards.

64. Wherefore, Plaintiff asks this Honorable Court to find that, under 42 U.S.C. § 1981, Defendant **AMPOL** liable for the violation of 42 U.S.C. § 1981.

## PRAYER

**WHEREFORE**, Plaintiff requests that this Honorable Court enter judgment against Defendant providing the following relief:

(a) All damages to which Plaintiff may be entitled, including but not limited to back pay, reimbursement for lost position and training, social security and other benefits, front pay, and any and all statutory relief;

(b) Reasonable attorney's fees, with conditional awards in the event of appeal;

(c) Pre-judgment interest at the highest rate permitted by law;

(d) Post-judgment interest from the judgment until paid at the highest rate permitted by law;

(e) Costs, including expert fees;

(f) Reasonable and necessary medical care and expenses in the past and future;

(g) Mental anguish damages in the past and future;

(h) Injunctive relief; and

(i) Such other and further relief, at law or in equity, to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of Federal Rules of Civil Procedure, the Plaintiff demands trial by jury in this action of all issues so triable.

**Respectfully Submitted**,

**SUDDUTH & ASSOCIATES, LLC**
Attorneys-at-Law
1109 Pithon St.
Lake Charles, Louisiana 70601
Tel: (337) 480- 0101
Fax: (337) 419- 0507

BY: */s/ James E. Sudduth, III*
**JAMES E. SUDDUTH, III, #35340**
**KOURTNEY L. KECH, #37745**
**PIERCE A. RAPIN, #38579**
*Counsel for Plaintiff*