UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **LORMAN L SKINNER** | **CASE NO. 6:21-CV-01833** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **AMERICAN POLLUTION CONTROL CORP** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

MEMORANDUM RULING

Presently before the Court is the Motion for Summary Judgment [ECF No. 12] filed by American Pollution Control Corp. ("AMPOL"). Plaintiff opposes the motion. For the reasons that follow, the motion is denied.

**I.**
**BACKGROUND**

Lorman Skinner ("Plaintiff") is an African American male who brings this suit under the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.[1] Plaintiff submits that he was subjected to a hostile work environment on the basis of his race and, thereafter, was subjected to retaliation after reported the harassment and thereafter engaging the EEOC to investigate the same. For purposes of the present lawsuit Plaintiff was employed by AMPOL as a technician at its Bayou Vista facility from January 6, 2020 through April 2, 2020.[2] Plaintiff had previously been employed by AMPOL from 2012 through 2019.[3] On February 12, 2020, during or following a safety meeting, Drew Duval, another technician employed by AMPOL, who was conducting the safety meeting, got into a verbal altercation with Plaintiff,

---

[1] ECF No. 1.
[2] ECF No. 17, Exhibit F.
[3] ECF No. 12, Exhibit 1.

1

during which Duval referred to Plaintiff as a "p***y a** n****r."[4] Plaintiff immediately reported the conduct to AMPOL's Bayou Vista Facility Manager, Casey Guidry ("Guidry").[5] At the time, Guidry was not present at the location but upon his return, he investigated the matter and Duval was ultimately sent home for the remainder of the day.[6] Plaintiff argues that Duval continued thereafter to make racial comments, including the repeated use of the "N word" while in Plaintiff's presence.[7] Plaintiff further alleges that he repeatedly complained about the behavior to Guidry.[8] Plaintiff alleges that he was impacted by the racial hostility from Duval.[9] On April 2, 2020, Plaintiff stopped working at AMPOL.[10] Plaintiff claims that he was advised by Guidry that he and others were being laid off due to COVID.[11] Guidry, however, claims that Plaintiff simply failed to stop coming to work and was terminated for job abandonment.[12] Plaintiff contacted the U.S. Equal Employment Opportunity Commission ("EEOC") to complain about the situation. Plaintiff eventually filed a formal EEOC Charge of Discrimination on May 14, 2020.[13]

AMPOL argues that Plaintiff cannot prove his claim of hostile work environment because an isolated comment by a co-worker did not affect any term, condition or privilege of his employment and further that AMPOL exercised reasonable care in promptly responding to the alleged remark. Further AMPOL argues that Plaintiff cannot establish an essential element of his retaliation claim since the EEOC Charge of Discrimination occurred subsequent to his termination of employment.

---

[4] *Id.*
[5] ECF No. 12, Exhibits 1 and 2.
[6] ECF No. 12, Exhibit 2.
[7] ECF No. 12, Exhibit 1.
[8] *Id.*
[9] *Id.*
[10] ECF No. 12, Exhibit 2 and 4.
[11] ECF No. 12, Exhibit 1.
[12] ECF No. 12, Exhibit 2.
[13] ECF No. 12, Exhibit 5.

## II.
## LAW and Analysis

### A. Summary Judgment Standard.

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[14] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[15] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[16] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[17]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[18] "Credibility determinations are not part of the summary judgment analysis."[19] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the

---

[14] Fed. R. Civ. P. 56(a).
[15] *Id.*
[16] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[17] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[18] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[19] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

existence of an element essential to that party's case, and on which that party will bear the burden of proof."[20]

### B. Hostile Work Environment.

A claim of race-based harassment requires proof that the plaintiff "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[21] Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[22] Harassment is sufficiently "severe or pervasive enough" to create a hostile work environment when it is "objectively hostile or abusive"—meaning "an environment that a reasonable person would find hostile or abusive"—and is subjectively perceived by the victim as abusive.[23] The Supreme Court has "emphasized ... that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position."[24] This objective inquiry requires that the Court consider "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[25] "[N]o single factor is required."[26]

---

[20] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catlett*, 477 U.S. 317, 322 (1986)).
[21] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[22] *Id.*
[23] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).
[24] *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998).
[25] *Harris*, 510 U.S. at 23.
[26] *Id.*

4

The Supreme Court has held that, under Title VII, the analysis of an employer's liability for workplace harassment depends on the status of the harasser.[27] If the harassing employee is the victim's co-worker, as is the case here, the employer may be liable if "it was negligent in controlling work conditions."[28] Accordingly, AMPOL's argument that there can be no claim for hostile work environment simply because the comment or comments were made by a co-worker and not an individual with supervisory duties is unpersuasive.

AMPOL also argues that the comments did not affect a term, condition or privilege of Plaintiff's employment. As indicated above, the "totality of the employment circumstances" determines whether an environment is objectively hostile.[29] Although no single factor is determinative, pertinent considerations are: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance.[30] It should be noted that "the test—whether the harassment is severe or pervasive—is stated in the disjunctive."[31] Accordingly, "[a]n egregious, yet isolated, incident can alter the terms, conditions, or privileges of employment and satisfy the fourth element necessary to constitute a hostile work environment."[32] "The inverse is also true: Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a

---

[27] *Vance v. Ball State Univ.*, 570 U.S. 421, 424, 133 S. Ct. 2434, 186 L. Ed. 2d 565 (2013).
[28] *Id.* In cases in which the harasser is a "supervisor," different rules apply, and the employer may be held to be strictly liable depending on circumstances not at issue here. *See Id.* In the present case, the parties seem to agree that Duval had no authority to make employment decisions regarding Plaintiff but Plaintiff maintains that Duval had a position of authority at the work site. As the issue of whether Duval had some supervisory role is not determinative of this motion, the Court will not address this disputed fact.
[29] *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022) (citing *Harris*, 510 U.S. at 23); *see also Jackson v. Quanex Corporation*, 191 F.3d 647, 659 (6th Cir. 1999) (holding that, under the "totality of the circumstances" test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment, but whether — taken together — the reported incidents make out such a case.").
[30] *Id.* (citing *Harris*, 510 U.S. at 23).
[31] *Id.*
[32] *Id.* (citing *Harvill*, 433 F.3d at 434-35).

hostile work environment exists."[33] Thus, "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."[34] The Fifth Circuit has further stated that "[t]here is no mathematical formula to determine whether conduct is sufficiently severe or pervasive to establish a hostile-work-environment claim."[35]

Numerous courts have found instances where the use of the "N word" itself was sufficient to create a hostile work environment.[36] The Fifth Circuit has noted that, "[p]erhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as [the N word]."[37] That term has been further described as "a term that sums up ... all the bitter years of insult and struggle in America, [a] pure anathema to African-Americans, [and] probably the most offensive word in English."[38]

In the instant case, based upon the evidence currently in the record, the Court is unable to determine whether AMPOL knew or should have known of the harassment in question and failed to take prompt remedial action. While the record reflects that AMPOL took action regarding the February 12, 2020 incident, Plaintiff claims there was continuous use of the racial slur after that time and that he reported those incidents to AMPOL and no action was taken. AMPOL alleges it was unaware of any further incidents, and in fact, Mr. Guidry testified that he thought everything was fine between Plaintiff and Duval after that time. There is therefore a genuine issue of material fact regarding whether AMPOL knew or should have known of the harassment in question and failed to take prompt remedial action.

---

[33] *Id.*
[34] *Id.* (quoting *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)).
[35] *Donaldson v. CBD Inc.*, 335 F. App'x 494, 502 (5th Cir. 2009).
[36] *Collier v. Dallas County Hosp.*, 827 Fed. Appx. 373, 377 (5th Cir. 2020) (collecting cases).
[37] *Woods v. Cantrell*, 29 F.4th 284, 284 (5th Cir. 2022) (citing *Rodgers v. WesternSouthern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986)).
[38] *Woods*, 29 F. 4th at 294 (citing *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (per curiam) (Kavanaugh, J., concurring) (citations omitted).

C. **Title VII Retaliation Claim.**

To establish a *prima facie* case of retaliation under Title VII, a plaintiff must show that "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action."[39] A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[40] Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").[41] Evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause "requires opposition *of a practice made unlawful by Title VII.*"[42] However, the Fifth Circuit has made clear that the standard is not whether the plaintiff can successfully state and support a Title VII claim but whether the plaintiff "*reasonably believes* the employment practice to be unlawful."[43] This "reasonable belief" standard acknowledges that there is "some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII."[44]

AMPOL argues that Plaintiff cannot prove the retaliation claim because AMPOL was not officially notified of the EEOC charge until after Plaintiff's termination. However, there is no

---

[39] *Newbury*, 991 F.3d at 678 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)).
[40] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).
[41] *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).
[42] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (emphasis in original).
[43] *Id.* (citing *Payne v. McLemore's Wholesale & Retail Stores*, 654 F.2d 1130, 1136 (5th Cir. 1981)) (emphasis added).
[44] *Id.* at 241.

7

dispute that Plaintiff made an internal complaint to AMPOL on February 12, 2020. Plaintiff also claims that he made additional internal complaints which were not addressed. The issue of whether Plaintiff did, in fact, make additional internal complaints is disputed but Plaintiff's initial internal complaint would constitute "protected activity."[45]

There is no dispute as to whether AMPOL took an adverse employment action against Plaintiff as he was terminated from employment. As to the final element of the retaliation claim, a plaintiff asserting a Title VII retaliation claim must ultimately establish "but-for" causation. In other words, the plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer."[46] The Fifth Circuit, however, has observed that "we have repeatedly held that the requirement of showing but-for causation applies in the final, pretext stage, rather than the prima facie stage."[47] At the prima facie stage, the causation standard is less stringent than the strict "but-for" causation standard.[48] A plaintiff need not show that the protected activity was the sole cause for retaliation, only that the two are "are not completely unrelated."[49] The employee may prove this through direct or circumstantial evidence.[50] At the prima facie stage, a plaintiff can establish causation by showing a temporal proximity between the protected activity and the adverse employment action alone.[51] This temporal proximity must be "very close," and the Supreme Court has held that a period of three months is insufficient to show causation.[52] The Fifth Circuit's jurisprudence suggests that two and one-half months is the longest period that can,

---

[45] *Fierros v. Tex. Dep't of Health*, 274 F. 3d 187, 194 (5th Cir. 2001)(citing *Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914-15 (5th Cir. 2008)) (finding that an employee's internal report and informal verbal complaints constitute "protected activity."); *see also Dollis v. Rubin*, 77 F.3d 777 (5th Cir. 1995).
[46] *University of Texas Southwest Medical Center v. Nasser*, 570 U.S. 338, 362 – 63 (2013).
[47] *Williams v. BRFHH Shreveport, L.L.C.*, 801 F. App'x 921, 924 – 26 (5th Cir. 2020) (citing *Garcia v. Professional Contract Services, Inc.*, 930 F. 3d 236, 243 (5th Cir. 2019)).
[48] *Id.*
[49] *Besser v. Texas Gen. Land Off.*, 834 F. App'x 876, 882 (5th Cir. 2020).
[50] *McCoy*, 492 F.3d at 556.
[51] *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 578 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (citations omitted).
[52] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

8

without more, show causation for retaliation purposes.[53] In the present case, the time between Plaintiff's first protected activity and his discharge is approximately fifty-one (51) days, which is less than two months. The Court finds that the evidence in the record is sufficient to establish a *prima facie* case of retaliation.

Where, as here, the plaintiff successfully shows a prima facie case of retaliation under Title VII, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action …[i]f the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose."[54] A plaintiff must rebut "each nondiscriminatory or nonretaliatory reason articulated by the employer."[55] Evidence that casts doubt on the truth or legitimacy of the proffered reasons for an adverse employment action can be used to show pretext.[56] Temporal proximity is relevant at the pretext stage but is insufficient, standing alone, to demonstrate that a proffered reason is pretextual.[57] At the pretext stage, temporal proximity is only "one of the elements in the entire calculation."[58] AMPOL's proffered reason for Plaintiff's termination was job abandonment, specifically that Plaintiff failed to show up for work on three consecutive days. Plaintiff however testified that he did not show up for work because he was advised by Guidry that he, along with

---

[53] *Brown,* 969 F.3d 578 (noting that the court has held periods of six-and-a-half weeks, two months, and two-and-a-half months to be close enough to show a causal connection).
[54] *Newbury,* 991 F.3d at 678.
[55] *Id.*
[56] *Brown,* 969 F.3d at 578.
[57] *Id.* at 579 (citing *Strong v. Univ. Healthcare Sys., L.L.C.,* 482 F.3d 802, 808 (5th Cir. 2007)).
[58] *Strong,* 482 F.3d at 808 (citing *Shirley v. Chrysler First, Inc.,* 970 F.2d 39 (5th Cir.1992)(finding that the plaintiff proved retaliation by showing temporal proximity, a lack of disciplinary history throughout a nine-year employment, termination on the basis of incidents for which no evidence existed, and repeated harassment by a supervisor about an EEOC complaint)).

other employees were being laid off due to COVID.[59] AMPOL has presented testimony indicating that there were never any COVID layoffs.[60]

While job abandonment is a legitimate, non-discriminatory reason for termination, the Court finds that there is a genuine dispute of material fact as to whether that cause is pretextual. A reasonable trier of fact could conclude that Plaintiff was informed by his supervisor that he was being laid off due to COVID and that was the reason that he failed to show up for work. This disputed evidence would cast doubt on the truth or legitimacy of AMPOL's proffered reason for termination and could therefore be used to show pretext.[61] Accordingly, the Court finds that there is a genuine issue of material fact as to whether AMPOL can meet its burden to articulate a legitimate, nondiscriminatory or nonretaliatory reason for Plaintiff's termination. For that reason, the Motion for Summary Judgment as to Plaintiff's retaliation claim is denied.

### III.
### CONCLUSION

For the foregoing reasons, the Court finds that there are genuine issues of material fact as to both the hostile work environment claim as well as the retaliation claim. Accordingly, the Motion for Summary Judgment is DENIED.

THUS DONE in Chambers on this 13th day of January, 2023.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[59] ECF No. 12, Exhibit 2.
[60] ECF No. 12, Exhibits 3, 4 and 5.
[61] *Brown*, 969 F.3d at 578.